# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# CHARLOTTESVILLE DIVISION

| | |
|---|---|
| WILLIAM RICHARD HULKENBERG, SR., RONALD JONES, LARRY BOWEN, WILLIAM RICHARD HULKENBERG, JR., JEREMY HULKENBERG, and ANDREW HALL,<br><br>Plaintiffs,<br><br>v.<br><br>ANABAPTIST HEALTHSHARE, KINGDOM HEALTHSHARE MINISTRIES LLC a/k/a KINGDOM HEALTHSHARE INTERNATIONAL f/k/a ANABAPTIST HEALTHSHARE, UNITY HEALTHSHARE LLC, ONESHARE HEALTH, LLC, ALEX CARDONA, and TYLER HOCHSTETLER, ESQ.,<br><br>Defendants. | Civil Action No. 3:19-cv-00031-GEC |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Defendants hereby submit this Memorandum of Law in Support of Defendants' Motion to Dismiss for Failure to State a Claim. As discussed in more detail below, Plaintiffs' single-count Complaint fails to state a claim and should be dismissed with prejudice pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).

## I. INTRODUCTION

To proceed with a lawsuit, a plaintiff must actually set forth a well-pled and cohesive set of factual allegations that state a legally cognizable claim under the governing law, and then

ultimately prove those allegations to a factfinder. Plaintiffs' Complaint fails even to state a claim under Virginia law, and therefore should be dismissed on the pleadings.

OneShare International is an Internal Revenue Code § 501(c)(3) public charity that for years has managed a successful Health Care Sharing Ministry ("HCSM") for members of the Anabaptist and Mennonite communities in Virginia. *See* Compl. ¶¶ 10, 19. An HCSM is an organization in which individual members who share a set of ethical or religious beliefs contribute funds to pay healthcare expenses of other members. They are built on the biblical principle that communities share an obligation to bear one another's burdens. Members make voluntary, non-refundable monetary gifts that are shared among HCSM members to cover their medical expenses. The HCSM coordinates the sharing process. *See id.* ¶ 10.

As alleged in the Complaint,[1] Plaintiffs previously served in various capacities as at-will employees of OneShare Health.[2] *See* Compl. ¶¶ 4-9. Plaintiffs were placed on paid administrative leave on November 3, 2018 and were later terminated. *See id.* ¶¶ 61-62. Beyond these allegations, the Complaint devolves into nothing more than a smear campaign set forth in a haphazard, contradictory, shot-gunned pleading that includes a number of fanciful allegations that consist of nothing more than purported hearsay, rank speculation, blanket conclusions, assumptions, and innuendo.

---

[1] Defendants summarize the non-conclusory, factual allegations in the Complaint because they must be taken as true for purposes of this Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But Defendants dispute the veracity of the Complaint's allegations.

[2] OneShare International is a Virginia non-profit corporation that is exempt from federal taxes under Section 501(c)(3) of the Federal Internal Revenue Code. It was formerly known as Anabaptist Healthshare ("AHS"). OneShare International is the sole member of OneShare Health, LLC ("OneShare Health"), which was formerly known as Unity Healthshare, LLC. Alex Cardona serves as OneShare Health's CEO, and Tyler Hochstetler is a board member. OneShare International and OneShare Health briefly used the names Kingdom Healthshare International and Kingdom Healthshare Ministries before becoming OneShare. OneShare International and OneShare Health are referred to collectively herein as "OneShare."

Perhaps because Plaintiffs cannot allege that the Defendants have done anything wrong, Plaintiffs seek to ascribe to them a host of wrongful conduct of Timothy Moses and his company, Aliera Healthcare, Inc. ("Aliera"). This tactic is incredible, with Plaintiffs alleging that Defendants are covering up Moses's conduct all the while Defendants are aggressively and successfully pursuing Moses and Aliera in a lawsuit in Georgia. *See generally Aliera Healthcare, Inc. v. Anabaptist Healthshare*, No. 2018CV308981 (Fulton Cnty. Super. Ct.). These allegations against Moses and Aliera are already in the public record because **Defendants brought them to light**. In fact, Defendants have obtained an interlocutory injunction and the appointment of a receiver against Aliera based on Aliera and Moses's conduct. The Georgia court's 31 page Order is attached hereto as **Exhibit A**.[3] The absurdity of this lawsuit can be no better illustrated than by the fact that Plaintiffs make the demonstrably false allegation that Defendants are engaged in a cover up with Moses.

Stripped of its rhetoric and Plaintiffs' conclusory allegations, the Complaint appears to allege that Defendants conspired to defraud various third-party stakeholders for self-gain. *See* Compl. at ¶¶ 65–68. Plaintiffs William Hulkenberg, Sr., Larry Bowen, and Ronald Jones brand themselves as conscientious, at-will employees who were wrongfully terminated because "they knew too much." *See id.*; *see also* Compl. at 1. Plaintiffs William Hulkenberg, Jr., Jeremy Hulkenberg, and Andrew Hall add nothing more to the Complaint, other than that they were purportedly terminated "as punishment" for the other Plaintiffs' conduct. *See* Compl. at ¶¶ 7–9.

Plaintiffs' single-count Complaint is fatally flawed and should be dismissed. Even accepting all factual allegations as true, Plaintiffs do not state a plausible claim for wrongful

---

[3] On this motion to dismiss, the Court may take judicial notice of the Interlocutory Injunction Order entered in the Georgia litigation. *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 397 (4th Cir. 2006) (allowing judicial notice of authentic court records).

discharge under Virginia law. Virginia recognizes only three narrowly construed exceptions to the at-will employment doctrine and Plaintiffs do not – and cannot – properly allege any of them. *See* Compl. ¶¶ 71–86; *Anderson v. ITT Indus. Corp.*, 92 F. Supp. 2d 516, 520 (E.D. Va. 2000) (observing that the wrongful discharge claim remains a "narrow exception, and attempts to expand the doctrine have met with resistance in the legislature").

Without factual allegations supporting any of the three exceptions to the employment at-will doctrine, the Court can and should dismiss Plaintiffs' wrongful discharge claim and need not go any further. But even if Plaintiffs' claim were to fit within one of the exceptions, the claim would still fail because it has not been plead with the particularly required by Fed. R. Civ. P. 9(b). Plaintiffs allege that they were discharged because they knew of purported frauds committed by Defendants, yet their claim is bereft of the type of "who, what, where, when" allegations that are now universally required to state a fraud claim under Rule of Civil Procedure 9(b). Indeed, when they do purport to allege something questionable, there are no following allegations that lay an adequate—and legally required—foundation to allow them to proceed. There are no first-, second-, or even third-hand conversations; no emails or texts; no financial documents; and not even a date or a location to substantiate Plaintiffs' empty and shot-gunned pleading. Speculation, rhetoric, and innuendo are, of course, insufficient to carry Plaintiffs' burden.

At bottom, Plaintiffs assert that they are former employees who were terminated because of inside information that they claim they knew about Defendants. If what they claim is true (it is not), then they should have had no difficulty in stating a plausible claim with factual allegations, and they should have done so with the level of particularity required Rule 9(b). But this Court need not even reach this pleading deficiency because no amount of repleading could

give life to a wrongful termination claim that is plainly foreclosed by Virginia's employment at-will doctrine. Granting them leave to replead their contentions would be futile, and therefore, dismissal of Plaintiffs' claims should be with prejudice.

## II. STANDARD OF REVIEW

Under Rule 12(b)(6), this Court must dismiss Plaintiffs' claims when, as here, they fail to plead sufficient factual allegations "to raise [their] right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiffs must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* Although the Court must accept as true all well-pled factual allegations, the same is not true for legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Plaintiffs' claims do not pass muster under Rule 12(b)(6) unless they plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

Moreover, because Plaintiffs' allegations sound in fraud, Plaintiffs must satisfy the heightened pleading requirements of Rule 9(b). *See Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618, 629 (4th Cir. 2008) ("When a plaintiff makes an allegation that has the substance of fraud . . . he cannot escape the requirements of Rule 9(b) by adding a superficial label"). Plaintiffs must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This is a "stringent pleading standard." *United States ex rel. Grant v. United Airlines, Inc.*, 912 F.3d 190, 197 (4th Cir. 2018). To satisfy the requirements of Rule 9(b), Plaintiffs must include factual

allegations that give rise to "some indicia of reliability" that fraud has taken place. *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 457 (4th Cir. 2013) (internal quotation marks and citation omitted); *see also United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1313 (11th Cir. 2002) ("If Rule 9(b) is to carry any water, it must mean that an essential allegation and circumstance of fraudulent conduct cannot be alleged in . . . [a] conclusory fashion."). Plaintiffs must allege "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *United States ex rel. Elms v. Accenture LLP*, 341 F. App'x 869, 872 (4th Cir. 2009) (internal quotation marks and citation omitted). The particularity requirement is not a staid formality. Rather, it exists to ensure that Defendants have "sufficient information to formulate a defense by putting [them] on notice of the conduct complained of." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (quoting *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Georgia, Inc.,* 755 F. Supp. 1055, 1056-57 (S.D. Ga. 1990)). This serves to curb frivolous suits and to protect Defendants from "harm to their goodwill and reputation" by unsubstantiated rhetoric.

Plaintiffs' allegations woefully fail to meet these standards. Plaintiffs fail to articulate any cognizable claim for relief because they have not alleged facts that would allow the Court to do anything more than speculate as to Defendants' purported conduct. This Court should, therefore, grant Defendants' Motion and dismiss Plaintiffs' Complaint in its entirety.

### III. ARGUMENT

#### A. Plaintiffs' Wrongful Discharge Claim Fails under Virginia Law.

Plaintiffs' allegations fail to state a claim for wrongful discharge. Virginia follows the well-settled employment-at-will doctrine, under which an employer may "terminate the

employment relationship without the need to articulate a reason." *Johnston v. William E. Wood & Assocs.*, 292 Va. 222, 225, 787 S.E.2d 103, 105 (2016); *Miller v. SEVAMP, Inc.*, 234 Va. 462, 468, 362 S.E.2d 915, 919 (1987). While the Virginia Supreme Court has recognized a narrow exception to the at-will doctrine where an employer's termination of an employee violates public policy, *see generally Bowman v. State Bank of Keysville*, 229 Va. 534, 331 S.E.2d 797 (1985), that exception only applies in three limited circumstances:

(1) "When an employer violated a policy enabling the exercise of an employee's statutorily created right";

(2) "When the public policy violated by the employer was explicitly expressed in the statute and the employee was clearly a member of that class of persons directly entitled to the protection enunciated by the public policy"; and

(3) "When the discharge was based on the employee's refusal to engage in a criminal act."

*Francis v. Nat'l Accrediting Comm'n of Career Arts & Scis., Inc.*, 293 Va. 167, 172-73, 796 S.E.2d 188, 190-91 (2017) (citations and quotation marks omitted); *Rowan v. Tractor Supply Co.*, 263 Va. 209, 213-14, 559 S.E.2d 709, 711 (2002).

Plaintiffs' Complaint fails to state a claim under any of the three wrongful discharge exceptions. Virginia courts have consistently reaffirmed that these wrongful discharge exceptions are narrowly tailored. *See Francis*, 293 Va. at 172, 796 S.E.2d at 190 ("[T]his Court has consistently characterized such exceptions as 'narrow.'"); *see also Vanburen v. Va. Highlands Orthopaedic Spine Ctr., LLC*, 728 F. Supp. 2d 791, 798 (W.D. Va. 2010) (declining to expand any exception when "[m]any courts have recognized the Virginia Supreme Court's desire to limit" their expansion). Moreover, courts applying Virginia employment law have intentionally guarded against intrusions on the at-will employment doctrine, particularly to prevent these legal exceptions from swallowing the at-will doctrine itself. *See Leverton v.*

*Alliedsignal, Inc.*, 991 F. Supp. 486, 493 (E.D. Va. 1998) (declining to expand the exceptions to the employment at-will doctrine because "the limited exception, which for years the Supreme Court of Virginia has been at considerable pains to tightly restrict, soon would become so expansive as to be swallowed in its entirety.").

      1. <u>Plaintiffs Fail to Allege that They Were Fired for Having Exercised a Statutorily-Protected Right.</u>

To meet the first wrongful discharge exception, Plaintiffs must show that: (1) a statute conferred a specific right on the employees; and (2) Defendants' termination of employment violated the public policies comprising that right. *Francis*, 293 Va. at 173, 796 S.E.2d at 191. Although Plaintiffs baldly claim that "Defendants violated public policy enabling the exercise of Plaintiffs' statutorily created rights," Compl. ¶ 75, this conclusory allegation fails to specify what rights they attempted to exercise, let alone what statute created those rights.

In *Bowman v. State Bank of Keysville*, the Virginia Supreme Court recognized a specific, statutorily created right for stockholders to exercise their right to cast one vote per share of stock. 229 Va. 534, 540, 331 S.E.2d 797, 801 (1985). The Court found that the defendant bank's threats to terminate the plaintiff's employment if she failed to vote her shares in favor of a merger violated this specific right granted by the Virginia General Assembly. *Id.* The Court explained that the statute in question "contemplate[d] that the right to vote shall be exercised free of duress and intimidation imposed on individual stockholders by corporate management." *Id.*; *see also Miller*, 234 Va. at 467, 362 S.E.2d at 918 (recognizing that, in *Bowman*, "the employer had misused its freedom to terminate the services of at-will employees in order to subvert a right guaranteed to stockholders by statute").

In stark contrast to *Bowman*, Plaintiffs do not cite a single statute that confers upon them an affirmative right that their termination prevented them from exercising. Instead, Plaintiffs

resort to citing criminal statutes that authorize solely the Commonwealth to pursue criminal actions against those who take part in certain conduct. *See Storey v. Patient First Corp.*, 207 F. Supp. 2d 431, 452 (E.D. Va. 2002) (dismissing wrongful discharge claim when a statute gave authority for the Commonwealth—not the plaintiff—to inspect records for false claims). Nor do these criminal statutes impose on Plaintiffs a statutory duty to speak.[4] *Cf. McFarland v. Va. Ret. Servs. of Chesterfield, L.L.C.*, 477 F. Supp. 2d 727, 735 (E.D. Va. 2007) (finding a first exception claim under a mandatory reporting statute).

Plaintiffs have not and cannot claim that they were terminated to prevent their exercise of a statutory right. Thus, this first of the three narrow exceptions to the employment at-will doctrine does not apply to save Plaintiffs' wrongful discharge claim.

> 2. <u>Plaintiffs Fail to Allege that They Were Fired in Violation of a Statutory Public Policy that Directly Applies to Them</u>.

The second exception "allows an action for wrongful discharge 'to proceed when the public policy violated by the employer was explicitly expressed in the statute and the employee was clearly a member of that class of persons directly entitled to the protection enunciated by the public policy.'" *Francis*, 293 Va. at 175, 796 S.E.2d at 192 (quoting *Rowan*, 263 Va. at 214, 559 S.E.2d at 711). Here, Plaintiffs claim that a list of criminal statutes were enacted to protect "the personal freedoms, health, safety and welfare of the general public." Compl. ¶ 84. But this

---

[4] Similarly, Plaintiffs do not and cannot invoke the protection of any whistleblower statutes, which only concern misconduct by or directed to public governmental entities. *See, e.g.*, Va. Code § 2.2-3009 (concerning conduct committed by government agencies or their contractors); Va. Code § 8.01-216.3 (concerning false claims submitted to the Virginia government); *see also, e.g.* 5 U.S.C. § 2105 (limiting the Whistleblower Protection Act's application to only federal employees). At best, all Plaintiffs allege here—again without any factual detail—is a generalized, common law "whistleblower retaliatory discharge claim that the Virginia Supreme Court has specifically refused to recognize as an exception to Virginia's employment-at-will doctrine." *Twigg v. Triple Canopy, Inc.*, No. 1:10cv122, 2010 WL 2245511, at *3 (E.D. Va. June 2, 2010) (quotation marks omitted).

truism misconstrues this second exception to the employment at-will doctrine, and Plaintiffs do not fall within the class directly entitled to the protection under these statutes.

In *Storey*, the court dismissed the plaintiff's wrongful discharge claim that relied on criminal statutes that the defendant allegedly violated. *Storey,* 207 F. Supp. 2d at 454. There, the plaintiff claimed he was terminated as a result of reporting that the defendant had fraudulently obtained money by falsifying a patient's records. *Id.* The court, however, found that the plaintiff, as an employee, did not "fall within the class of persons intended to be protected under these laws because neither law confers a right, and neither law imposes a duty, to disclose [the defendant employer's] illegal activities." *Id.* at 454. Nor was the plaintiff "a victim of any putative violation thereof." *Id.*

Plaintiffs' wrongful discharge claim here fails for the same reasons described in *Storey*. The cited criminal statutes do not espouse a public policy that directly and specifically entitles Plaintiffs to protection, but rather a general right flowing to the public at large. To hold otherwise would contradict Virginia's consistently narrow interpretation of the wrongful discharge doctrine. If a wrongful discharge claim was permitted in every instance a Virginia general welfare statute was alleged by a disgruntled former employee, "the limited exception, which for years the Supreme Court of Virginia has been at considerable pains to tightly restrict, soon would become so expansive as to be swallowed in its entirety." *Leverton*, 991 F. Supp. at 493.

### 3. Plaintiffs Fail to Allege that They Were Fired for Refusing to Engage in Criminal Conduct.

Plaintiffs' Complaint also fails to trigger the third and final wrongful discharge exception: "where the discharge was based on the employee's refusal to engage in a criminal act." *Rowan*, 559 S.E.2d at 711. "To meet the third exception . . . Plaintiff must show that he

could have been prosecuted under Virginia criminal law had he engaged in the conduct demanded by his employer." *Twigg*, 2010 WL 2245511, at *3. Although Plaintiffs list a slew of criminal statutes that they (falsely) claim that Defendants violated, they cannot meet this exception because they do not attempt to claim they were fired for refusing to engage in any criminal conduct.

It was for this very reason that the court in *Storey* found no claim under this exception when the plaintiff alleged that the defendant terminated his employment for reporting the defendant's supposedly illegal actions, including the submission of false claims to the federal government. *Storey*, 207 F. Supp. 2d at 453. The court emphasized that there was no allegation that the plaintiff "ever was asked, or directed, to submit false claims to the federal government or to engage in any other illegal act." *Id.* Rather, like here, the plaintiff in *Storey* merely alleged that the defendants terminated him for reporting what he suspected—without factual support— was illegal conduct. *Id*. at 453–54.

Plaintiffs' claim is—at best—a conclusory, "generalized, common-law 'whistleblower' retaliatory discharge claim that the Virginia Supreme Court has specifically refused to recognize as an exception to Virginia's employment-at-will doctrine." *Twigg*, 2010 WL 2245511, at *3 (quotation marks omitted); *see also Miller*, 234 Va. 462, 467-68, 362 S.E.2d at 918 ("*Bowman* applied a narrow exception to the employment-at-will rule, . . . but it fell far short of recognizing a generalized cause of action for the tort of 'retaliatory discharge.'") (citation and quotation marks omitted). Plaintiffs' wrongful discharge claim fails to satisfy any of the recognized exceptions to Virginia's at-will employment doctrine, and therefore, their Complaint fails to state a claim and must be dismissed in its entirety.

### B. Plaintiffs Fail to Allege Fraud with Particularity.

While the Court need not reach this issue since Plaintiffs fail to allege facts that support any exception to the employment at-will doctrine, even if they did meet one of the three exceptions, the Complaint would still be subject to dismissal for failure to plead fraud with particularity under Rule 9(b). Plaintiffs make generalized allegations that Defendants conspired to defraud their stakeholders for self-gain, yet they offer no *factual* allegations to support this contention. Because Plaintiffs attempt to base their flawed wrongful termination claim on allegations that Defendants committed fraud against third parties, Plaintiffs' allegations must satisfy the particularity requirement under Rule 9(b). *See Coleman v. Pentagon Fed. Cred Union*, No. 1:17-cv-18, 2017 WL 1044693, at *5 (E.D. Va. Mar. 17, 2017) (concluding the plaintiff must allege an underlying "fraudulent scheme" for wrongful discharge claim under Virginia law). Under Rule 9(b), Plaintiffs must allege with particularity "the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Feeley v. Total Realty Mgmt.,* 660 F. Supp. 2d 700, 712 (E.D. Va. 2009) (citation omitted); *Scharpenberg v. Carrington,* 686 F. Supp. 2d 655, 661–62 (E.D. Va. 2010); *see also Elms*, 341 F. App'x at 872. In other words, the complaint must allege "the who, what, when, where and how of the alleged fraud." *U.S. ex rel. Ahumada v. NISH*, 756 F.3d 268, 280 (4th Cir. 2014).

Plaintiffs cannot meet this burden. The Complaint's allegations offer no details as to the "specific conduct" Plaintiffs allege that Defendants committed, including when, where, and fundamentally, ***how*** it occurred. *Levinson v. Massachusetts Mut. Life Ins. Co.*, No. 4:06-cv-086, 2006 WL 3337419, at *7 (E.D. Va. Nov. 9, 2006); *see U.S. ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 456–57 (4th Cir. 2013) (observing that a plaintiff cannot just allege a

fraudulent scheme, but must also allege the specific fraudulent conduct to satisfy Rule 9(b)). Although Plaintiffs have concocted a number of fanciful allegations, they fall woefully short of including any "indicia of reliability" to plausibly suggest that any fraud occurred. *See Nathan*, 707 F.3d at 457.

Plaintiffs' core theory is that they were terminated because they allegedly discovered that "Unity [OneShare Health] was established as a vessel for fraud, and pass through shell entity for laundering money." Compl. ¶ 22. But Plaintiffs fail to allege with particularity the details about the fraud in which Defendants purportedly engaged. *See United States. ex rel. Ahumada v. Nat'l Ctr. for Emp't*, No. 1:06-cv-713, 2013 WL 2322836, at *3 (E.D. Va. May 22, 2013) ("Underlying schemes and other wrongful activities that result [in the fraudulent conduct] are included in the 'circumstances constituting fraud or mistake' that must be pled with particularity pursuant to Rule 9(b).") (quoting *United States ex rel. Elms v. Accenture LLP*, 341 F. App'x 869, 873 (4th Cir. 2009)). Instead, Plaintiffs rely on nothing more than unsupported statements and conclusions about the Defendants' alleged wrongdoing. Some of these allegations are not even internally consistent. For example, the Complaint alleges that OneShare Health was nothing more than a "shell entity for laundering money" but then alleges just two pages later that "Kingdom"—which is simply another name for OneShare Health—has "approximate[ly] $5,000,000 in annualized sales." Compl. ¶ 33.

Plaintiffs attempt to disguise the fact that they have no factual basis for asserting any claims against the Defendants by seeking to ascribe a host of bad conduct by Timothy Moses to Defendants. *See, e.g.*, Compl. ¶ 25 ("Moses controlled all of the finances for Unity [OneShare Health] through Aliera, including the banking and administration of Member claims. This allowed Moses to self-deal and essentially embezzle the money intended for Membership

'sharing,' thus leaving the Membership underfunded, or without any funds at all, without the Members' knowledge or authorization, and exposing the Members to catastrophic financial ruin."). But the Complaint contains no factual allegations that would permit the Court to impute Moses's bad conduct to any of the Defendants.[5] The Complaint merely alleges that Cardona "knew about Moses' embezzlement and private inurement of Unity [OneShare Health] funds from the start." Compl. ¶ 26. But it contains no facts suggesting that Cardona or any of the other Defendants perpetrated or participated in Moses's fraudulent activity in any way. Such conclusory allegations do not satisfy Rule 9(b). *See, e.g.*, *Greenstone v. Cambex Corp.*, 975 F.2d 22, 25 (1st Cir. 1992) (holding that "a general averment that defendants 'knew' earlier what later turned out badly" does not satisfy Rule 9(b)'s particularity requirement), *superseded by statute on other grounds*, Private Securities Litigation Reform Act of 1995, Pub. L. No. 104–67, 109 Stat. 737.

Indeed, a court in the Eastern District of Virginia has concluded that similarly generic fraud allegations failed to meet the pleading requirements of Rule 9(b). *See Hyundai Emigration Corp. v. Empower-Visa, Inc.*, No. 1:09-cv-124, 2009 WL 10687964 (E.D. Va. July 2, 2009). In *Hyundai*, the plaintiff contracted for immigration services but discovered that all but one of its clients' petitions were denied. The plaintiff raised fraud and civil RICO claims, alleging that: (1)

---

[5] Nothing highlights the absurd nature of Plaintiffs' Complaint quite like Plaintiffs' demonstrably false allegations that Defendants have attempted to cover up this conduct. *See* Exhibit A from *Aliera Healthcare, Inc. v. Anabaptist Healthshare, Unity Healthshare, LLC et al.*, Superior Court of Fulton County, Georgia, Case No. 2018CV308981 (court granting motion for an interlocutory injunction and the appointment of a receiver against Aliera). No one has been harmed more by this conduct than Defendants, and no one is pursuing redress for that conduct any more than Defendants. *See also* Amended Answer, Affirmative Defenses, and Counterclaims, attached hereto as **Exhibit B**, and the Motion to Join Timothy Moses and Chase Moses as Counterclaim Defendants, attached hereto as **Exhibit C**, which were filed in the Georgia litigation. Far from concealed, these claims are all in the public record (and Plaintiffs even seem to piggyback onto them in making allegations in this case).

the defendants "fraudulently, intentionally, and knowingly made false representations that they were capable of providing lawful immigration sponsorship"; and (2) that the defendants "filed fraudulent documents." *Id.* at *3. The district court rejected these allegations under Rule 9(b) as "devoid of particularity." *Id.* Specifically, the complaint lacked any factual context to apprise the defendants of the nature of the plaintiff's fraud allegations. *Id.* at *4; *see also Levinson*, 2006 WL 3337419, at *7 (concluding that plaintiffs' "broad[]" allegations that the defendants conducted a "fraudulent scheme consisting of numerous telephone calls made by [defendants'] agents" and in "fraudulent and deceitful sales practices through its agent" failed under Rule 9(b) because they offered "no facts as to the time, place, or specific conduct of any misleading communications" (alterations omitted)); *Coleman*, 2017 WL 1044693, at *5 (dismissing wrongful discharge claim for failure to allege fraud with particularity, reasoning that "ominous language" without specific factual context is insufficient under Rule 9(b)).

Just like the complaints in *Hyundai* and *Coleman*, the Complaint in this action contains nothing more than conclusory allegations of a nebulous scheme to defraud third-party stakeholders. This is insufficient to state a claim under Rule 9(b).

**C.     The Complaint Should Be Dismissed With Prejudice.**

Nor should the Court grant Plaintiffs leave to amend claims that are futile on their face and have no hope of improvement. *See, e.g.*, *In re PEC Sols., Inc. Sec. Litig.*, 418 F.3d 379, 391 (4th Cir. 2005) ("Leave to amend need not be given when amendment would be futile."); *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986) (stating a court should deny leave to amend a complaint where the proposed amendment is "frivolous on its face").

Even if they were to redraft a new complaint, Plaintiffs' allegations of fraud would not succeed against Defendants. *See, e.g.*, *Acito v. IMCERA Grp.*, 47 F.3d 47, 55 (2d Cir. 1995)

(finding that amendment to a complaint would be futile, despite the liberal rule that pleadings found deficient under rule 9(b) should typically be allowed leave to amend). Plaintiffs fail to allege any detail about the fraud in which Defendants purportedly engaged, relying on nothing more than unsupported statements about their alleged wrongdoing. Nor can Plaintiffs misappropriate the Defendants' claims against Moses without noting that Defendants have raised these claims in the Georgia litigation. *See supra* note 5. Plaintiffs offer no facts—only rhetoric—of what acts of fraud Defendants could have committed on their stakeholders, because there are none. *See United States ex rel. Jones v. Collegiate Funding Ser*vs., No. 3:07cv290, 2010 WL 5572825, at *15 (E.D. Va. Sep. 21, 2010) (denying leave to amend where there was no allegation of knowledge, through no fault of the party, of the underlying fraud), *adopted in relevant part*, 2011 WL 129842 (E.D. Va. Jan. 12, 2011); *see also Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1213 (11th Cir. 2001) (affirming denial of leave to amend the complaint, concluding that even a "more carefully drafted complaint could not state a claim").

Plaintiffs' allegations herein are a paradigm of conclusory and implausible pleading. It is precisely because of these kinds of allegations that Rule 9(b) exists—to "protect the defendant against frivolous suits; to eliminate fraud actions where all of the facts are learned only after discovery; and to safeguard the defendant's reputation." *Jarallah v. Thompson*, 123 F. Supp. 3d 719, 728 (D. Md. 2015); *see also United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1313 n.24 (11th Cir. 2002) ("When a plaintiff does not specifically plead the minimum elements of their allegation, it enables them to learn the complaint's bare essentials through discovery and may needlessly harm a defendants' goodwill and reputation by bringing a suit that is, at best, missing some of its core underpinnings, and, at worst, are baseless allegations used to extract settlements."). Because Plaintiffs have made no showing of fraud, and because such a

showing is necessary to their already-deficient wrongful termination claims,[6] any request to amend their complaint on this basis would be futile. *Jarallah*, 123 F. Supp. 3d at 728 ("Because Plaintiff has made no showing of fraud, and, absent such a showing, cannot bring [his] claims against [the defendant], Plaintiff's request for leave to amend is futile.").

Plaintiffs' pleading failures are even more inexcusable here because, as alleged in their own Complaint, Plaintiffs (falsely) allege they are former employees at the Defendants' businesses who were terminated because of the insider information that they claim to have known about Defendants. Compl. ¶¶ 5–9. As such, they have no excuse for failing to allege with requisite particularity—as opposed to rank conjecture and speculation—what the Defendant did to defraud their putative victims, when they did so, how they did so, and why they did so. This requires references to emails, text meeting minutes, memoranda, accounting records, calendar entries, and other corroborating factual circumstances to avoid dismissal with prejudice. Plaintiffs' facially inadequate pleading, which simply piggybacks the Defendants' contentions in the Georgia litigation, are entirely undeserving of Court-authorized amendment. Simply put, Plaintiffs' fraud allegations are futile on their face. There is no set of facts that would state a fraud or wrongful termination claim or salvage Plaintiffs' Complaint. Allowing an amendment would needlessly strain this Court's resources. Accordingly, the Court should dismiss this case with prejudice.

---

[6] Any proposed amendment would be similarly futile because Plaintiffs have failed to allege a claim under any exception to the employment at-will doctrine. *See supra* Section III(A). Virginia recognizes no cause of action for Plaintiffs' purported discharge, so any amendment would be futile and dismissal with prejudice is warranted. *See Metropolitan Reg'l Info. Sys. v. American Home Realty Network, Inc.*, 948 F. Supp. 2d 538, 568 (D. Md. 2013) (dismissing a claim with prejudice when no such claim is recognized); *Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 202–03 (M.D.N.C. 1997) (denying amendments as futile where North Carolina did not recognize the tort being pled).

## IV. CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court enter an Order dismissing Plaintiffs' Complaint in its entirety with prejudice and granting such further relief in their favor as the Court deems appropriate.

Respectfully submitted,

ONESHARE INTERNATIONAL, ONESHARE HEALTH, LLC, ALEX CARDONA, and TYLER HOCHSTETLER, ESQ.

By Counsel

s/ Marc A. Peritz
Marc A. Peritz, Esq. (VSB No. 39054)
Rachel D.G. Horvath, Esq. (VSB No. 80487)
Attorneys for Defendants
Morin & Barkley LLP
455 Second Street, S.E., Suite 200
Charlottesville, Virginia 22902
Telephone: (434) 293-1200
Fax: (434) 293-2135
E-mail: maperitz@morinandbarkley.com
E-mail: rhorvath@morinandbarkley.com


Kyle G.A. Wallace (*pro hac vice* application forthcoming)
Georgia Bar No. 734167
Gavin Reinke (*pro hac vice* application forthcoming)
Georgia Bar No. 159424
Alan F. Pryor (*pro hac vice* application forthcoming)
Georgia Bar No. 101888
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 8, 2019, a copy of the foregoing was filed with the Clerk of Court using the CM/ECF system, which will send notification to the following:

Richard C. Armstrong
Allen & Allen
2100 Rio Hill Center
Charlottesville, VA 22901
434-284-4287
Fax: 800-768-2222
Email: richard.armstrong@allenandallen.com

Thomas J. Connick
Connick Law
25550 Chagrin Blvd., Suite 101
Beachwood, OH 44122
216-364-0512
Email: tconnick@connicklawllc.com

*Counsel for Plaintiffs*

                                          s/ Marc A. Peritz
                                          Marc A. Peritz, Esq. (VSB No. 39054)
                                          Attorneys for Defendants
                                          Morin & Barkley LLP
                                          455 Second Street, S.E., Suite 200
                                          Charlottesville, Virginia 22902
                                          Telephone: (434) 293-1200
                                          Fax: (434) 293-2135
                                          E-mail: maperitz@morinandbarkley.com

s:\office\hulkenberg\mtd\motion to dismiss.memo.doc