CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 17 2019

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| WILLIAM RICHARD HULKENBERG, SR., et al., | )<br>)<br>) |
| Plaintiffs | )<br>) Civil Action No. 3:19CV00031<br>) |
| v. | ) **MEMORANDUM OPINION**<br>)<br>) By: Hon. Glen E. Conrad |
| ANABAPTIST HEALTHSHARE, et al., | ) Senior United States District Judge<br>) |
| Defendants | ) |

Plaintiffs William Richard Hulkenberg, Sr., Ronald Jones, Larry Bowen, William Richard Hulkenberg, Jr., Jeremy Hulkenberg, and Andrew Hall (the "Former Employees") filed a one-count Virginia-law claim of wrongful termination against Anabaptist Healthshare, Kingdom Healthshare Ministries LLC, Unity Healthshare LLC, OneShare Health, LLC, Alex Cardona, and Tyler Hochstetler. The case is currently before the court on Defendants' motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, ECF No. 35, and the Former Employees' motion to amend their complaint. The motion to amend attaches a proposed amended complaint adding Eldon Hochstetler, Tyler Hochstetler's father, as a defendant. ECF No. 49-3. Defendants oppose this motion arguing that amendment would be futile and that adding Eldon Hochstetler as a defendant would be a bad faith amendment. In addition, the Former Employees moved for leave to file a reply in support of their motion to amend, which attached a proposed reply. ECF No. 51. The court considered the Former Employees' proposed reply when deciding Defendants' motion. For the reasons set forth below, the court will grant in part Defendants' motion to dismiss, grant the Former Employees' motion for leave to amend their complaint, and deny as moot the motion for leave to file a reply.

## Background

The following facts are taken from the complaint and the exhibits attached thereto. Before delving into the facts of this case, however, the court summarizes the statutory context in which these claims developed. The allegations require some understanding of a health care cost sharing arrangement that Congress used to allow certain religious organizations to avoid the so-called individual mandate of the Affordable Care Act. See generally 26 U.S.C. §§ 5000A(a), (d)(1), & (d)(2)(B).

Under Virginia law, a health care sharing ministry ("HCSM") is "a health care cost sharing arrangement among individuals of the same religion based on their sincerely held religious beliefs, which arrangement is administered by a" § 501(c)(3) non-profit organization, and complies with other requirements. Va. Code Ann. § 38.2-6300. These requirements include that an HCSM:

> 3. Provides for the financial or medical needs of a member through payments directly from one member to another. The requirements of this subdivision [] may be satisfied by a trust established solely for the benefit of members, which trust is audited annually by an independent auditing firm; [and]
>
> 5. Provides written monthly statements to all members that list the total dollar amount of qualified needs submitted to the organization by members for their contribution.

Id. By following these requirements, HCSMs are not "considered to be engaging in the business of insurance" for purposes of Virginia's insurance statutes. Va. Code Ann. § 38.2-6301.

### *The Parties*

The Former Employees are all former at-will[1] employees of defendant Kingdom Health Care Ministries LLC ("'Kingdom"), now known as OneShare Health, LLC ("OneShare") or Unity Health Care Ministries, LLC ("Unity"). Compl. ¶¶ 4–9, 12. Bowen was fired at some point in

---

[1] None of the Former Employees allege that they were employed under a contract with a set term. The court therefore treats their employment as being at-will. See Miller v. SEVAMP, Inc., 362 S.E.2d 915, 916–17 (Va. 1987).

late 2018. Id. ¶¶ 55–57. The other Former Employees were placed on paid administrative leave on November 3, 2018 and were terminated on January 7, 2019. Id. ¶¶ 61–62.

Defendants Anabaptist Healthshare and Unity were predecessor entities to Kingdom. Alex Cardona serves as OneShare's CEO, and Tyler Hochstetler is a board member.[2] Unity, Kingdom, and OneShare are or were all HCSMs. Id. ¶¶ 10–14.

*The Former Employees' Allegations*

A non-party, Aliera Healthcare, Inc ("Aliera"), factors heavily in the Former Employees' allegations. Aliera is a for-profit company founded by Timothy Moses, which entered into a partnership with Unity in 2016–2017. Under the Aliera/Unity agreement, "Unity had no control over its finances fueled by Membership dues." Id. ¶ 25. Rather, "Moses controlled all the finances for Unity through Aliera," and purportedly violated IRS regulations by rendering the partnership a for-profit enterprise. Id. ¶¶ 26–29. The Former Employees allege that Moses is a convicted felon who eventually embezzled funds from the Aliera/Unity partnership and engaged in self-dealing. Id. ¶¶ 16, 26–27.

In February 2018, a publicly traded third-party, apparently a potential business partner called HealthMarkets, Inc., refused to do business with Aliera/Unity without conducting some form of diligence. HealthMarkets had concerns about the partnership's financial solvency and commission structures. Id. ¶¶ 34–35. In response, Cardona retained a consulting firm, Milliman, Inc., to provide an audit of Aliera/Unity. Id. In April 2018, Cardona and Hochstetler discovered Moses' embezzlement in the course of the Milliman audit. Id. ¶¶ 39–40. By June 2018, Moses "admitted" to having "pilfered" funds from the Aliera/Unity partnership. Cardona and Hochstetler removed Moses' access to certain accounts, but they did not report his actions to any legal

---

[2] The court exercises diversity jurisdiction. The Former Employees are Texas, Missouri, and Ohio citizens. Defendants are Virginia and Georgia citizens. Compl. ¶ 1.

authorities. Id. ¶¶ 41–42. The Former Employees also allege that Cardona and Hochstetler acted in concert with Moses to some extent, and thereby profited from Moses' behavior. In addition, Cardona allegedly created sham sales positions for his wife and niece, extracted large sales commissions, and both Cardona and Hochstetler took in purportedly illegal "per member/per month" fees. Id. ¶¶ 28–32.

On August 9, 2018—after Cardona and Hochstetler had discovered Moses' actions—Unity hired William Hulkenberg, Sr. and Ronald Jones as Chief Ministry Officer and Chief Sales Officer, respectively. Id. ¶¶ 43–44. The Former Employees allege that Hulkenberg, Sr. and Jones owed fiduciary duties to Kingdom and its HCSM members in their respective roles as Chief Ministry Officer and Chief Sales Officer. Id. ¶¶ 4–5. The remaining Former Employees were involved in business development, product design, interaction with third party administrators, working with on-line webcasts and product demonstrations, as well as administration. Id. ¶¶ 6–9.

At some point, Hulkenberg, Sr. became suspicious of "foul play" on the part of Moses and Cardona. Id. ¶¶ 45–46. Between October 25 and November 3, 2018, Hulkenberg, Sr. alerted the other Former Employees, had discussions with Hochstetler and Cardona to no avail, and met with a Kingdom board member regarding his concerns. Id. ¶¶ 45–50. On November 3, 2018, Hulkenberg, Sr. and Jones were placed on administrative leave. Id. ¶ 61.

On November 21, 2018, Milliman issued an initial report. The Former Employees contend that this report failed to account for various sales commission expenditures, and was thus, inaccurate. Id. ¶¶ 51–55. On November 27–28, Hulkenberg, Sr. and Bowen instructed Milliman to rerun the report accounting for additional data: "Bowen told [Milliman] to use 30% for commissions, stating that Cardona told him to always use 30% for commissions even though commissions can go as high as 37%." Id. ¶ 55. Cardona grew angry when he received the second

Milliman report, which he did not order, and fired Bowen. Id. ¶ 57.

On January 7, 2019, all of the Former Employees except Bowen, who had already been terminated, received a letter from Hochstetler, advising that they had been fired "based on [their] demands and actions taken while employed at Kingdom.'" Id. ¶ 62.

In sum, the Former Employees allege that they attempted to carry out their fiduciary duties and raised the alarm about Moses' and Aliera's business practices, but Defendants fired them in order to "silence" them. Id. ¶ 67. William Hulkenberg, Sr., Larry Bowen, and Ronald Jones state they were wrongfully terminated because "they knew too much." Id. at 3. It is unclear that William Hulkenberg, Jr., Jeremy Hulkenberg, and Andrew Hall have any role in the allegations, aside from being purportedly terminated "as punishment" for the other Former Employees' conduct. Id. ¶¶ 7–9. All the while, the Former Employees allege various crimes purportedly committed by the Defendants, id. ¶¶ 78–86, and that their "terminations were based on [their] refusal to hide, engage in, conceal, or acquiesce to" that same "illegal and/or criminal conduct," id. ¶ 77.

Defendants deny the Former Employees' account of the events. Defendants allege that, far from Defendants covering up Moses' conduct, Defendants are pursuing Moses and Aliera in a lawsuit in Georgia state court. See generally Aliera Healthcare, Inc. v. Anabaptist Healthshare, No. 2018CV308981 (Fulton Cnty. Super. Ct.). Indeed, Defendants have obtained an interlocutory injunction and the appointment of a receiver against Aliera, which was entered on April 25, 2019— before the Former Employees filed the instant complaint. Defendants attach the Georgia court's order to their motion. ECF No. 35-1.[3]

---

[3] The court may take judicial notice of the order. Witthohn v. Fed. Ins. Co., 164 F. App'x 395, 397 (4th Cir. 2006) (allowing judicial notice of authentic court records).

## Standard of Review

"A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the claims pled in a complaint." ACA Fin. Guar. Corp. v. City of Buena Vista, Virginia, 917 F.3d 206, 211 (4th Cir. 2019). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007)). A claim is plausible if the facts pled "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Factual allegations that do not allow a court to infer more than "the mere possibility of misconduct" are insufficient. Id.

While this pleading standard does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678. "Labels, conclusions, recitation of a claim's elements, and naked assertions devoid of further factual enhancement will not suffice to meet the Rule 8 pleading standard." City of Buena Vista, Virginia, 917 F.3d at 211. The court must accept the factual allegations in the complaint as true, but need not accept a complaint's legal conclusions. Iqbal, 556 U.S. at 678. "[W]hile Rule 8 departed from the hypertechnical code-pleading requirement of a prior era, it did not 'unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.'" City of Buena Vista, Virginia, 917 F.3d at 211 (quoting Iqbal, 556 U.S. at 678–679).

Defendants would have the court examine the Former Employees' claims under Rule 9(b)'s heightened pleading standard. The court need not decide whether Rule 9(b) applies because it can decide the motion to dismiss under the Rule 8 standard.

## Discussion

### I. Defendants' Motion to Dismiss

"Virginia adheres to the employment at-will doctrine, which allows . . . the employer . . . to terminate the employment relationship without the need to articulate a reason." Francis v. Nat'l Accrediting Comm'n of Career Arts & Scis., Inc., 796 S.E.2d 188, 190 (Va. 2017) (quotation marks and alterations omitted). The Virginia Supreme Court has recognized a narrow exception to the at-will doctrine where an employer's termination of an employee violates public policy. See generally Bowman v. State Bank of Keysville, 331 S.E.2d 797 (Va. 1985). This only applies in "three limited circumstances," referred to here as the "Bowman exceptions":

1) "When an employer violated a policy enabling the exercise of an employee's statutorily created right";
2) "When the public policy violated by the employer was explicitly expressed in the statute and the employee was clearly a member of that class of persons directly entitled to the protection enunciated by the public policy"; and
3) "When the discharge was based on the employee's refusal to engage in a criminal act."

Francis, 796 S.E.2d at 190–91 (citations and quotation marks omitted). The Supreme Court of Virginia "has consistently characterized such exceptions as 'narrow.'" Id.

#### a. The First Bowman Exception

The Former Employees have not stated a claim under the first Bowman exception. "To analyze such a claim, it is important to discern what right was conferred on an employee by statute . . . ." Id.; Storey v. Patient First Corp., 207 F. Supp. 2d 431, 452 (E.D. Va. 2002) (no claim because statute provided right to Commonwealth to inspect records, not the plaintiffs); Dunn v. Millirons, 176 F. Supp. 3d 591, 599 (W.D. Va. 2016) (Conrad, J.), aff'd, 675 F. App'x 314 (4th Cir. 2017) ("The statute confers rights and powers on the board of supervisors as a whole, and does not specifically authorize individual board members to inquire into the official conduct of

county officers."). The Former Employees point to no right granted to them by any Virginia statutes—Virginia's HCSM statute or otherwise—which they were fired for exercising.

The Former Employees request that the court expand the Bowman exceptions to fit their claims, either under Virginia's HCSM statute or under certain of the Former Employees' purported fiduciary duties. The court will not do so. "[A] state claim which has not been recognized by that jurisdiction's own courts constitutes a settled question of law, which will not be disturbed by [federal courts] absent the most compelling of circumstances." Tritle v. Crown Airways, Inc., 928 F.2d 81, 84 (4th Cir. 1990) (refusing to expand West Virginia wrongful discharge law). Federal courts "generally do not have the authority to surmise or suggest [the] expansion" of such laws. Id.; Sewell v. Macado's, Inc., No. 7:04-CV-268, 2004 WL 2237074, at *4 (W.D. Va. Oct. 4, 2004) (Conrad, J.) (dismissing Bowman claim and declining to expand exceptions).

The Virginia Supreme Court has not ruled that a Bowman claim arises from being fired for exercising a fiduciary duty. Based on the Virginia Supreme Court's repeated admonitions that the Bowman exceptions are "narrow," the court holds that Virginia law would not support such a claim. Reasoning in other decisions guides this court. For example, the District of Columbia Court of Appeals held that the Virginia Supreme Court would be unlikely to rule that Bowman would allow wrongful termination suits based on a corporate director's exercise of his fiduciary duty, based on the narrowness of the doctrine. Atkins v. Indus. Telecommunications Ass'n, Inc., 660 A.2d 885, 888–91 (D.C. 1995). Milton v. IIT Research Institute also adds persuasive authority. 138 F.3d 519 (4th Cir. 1998). In that case, the United States Court of Appeals for the Fourth Circuit ruled that Maryland law, which has a framework similar to Virginia's, would not support such a claim brought by a corporate officer who was allegedly fired for exercising his fiduciary duties. Id. at 523 ("Maryland law does provide a wrongful discharge cause of action for

employees who are terminated because they perform their statutorily prescribed duty. However, this exception to the norm of at-will employment has been construed narrowly by the Maryland courts . . . .") (quotation marks and citation omitted); see also Lawrence Chrysler Plymouth Corp. v. Brooks, 465 S.E.2d 806, 809 (Va. 1996) (rejecting argument to "expand" Bowman exceptions to rely on purported "common law duties" of a car dealership).

In any case, while Bowen and Hulkenberg, Sr. allegedly had fiduciary duties, the Former Employees have not pled non-conclusory facts that would allow the court to infer that those duties extended to ensuring the tax and regulatory compliance of an HCSM. See Milton, 138 F.3d at 523 ("[F]or [plaintiff] to recover, it is not enough that *someone* at [his company] was responsible for correcting its tax filings or that the corporation may have been liable for tax fraud. This responsibility was never [his], nor did he face any potential liability for failing to discharge it, so his claim fails.").

The Former Employees' proposed amended complaint fails to cure these defects or identify alternative statutes providing grounds for relief under this exception. The court, therefore, dismisses with prejudice any claims the Former Employees might bring under the first Bowman exception. Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 409–10 (4th Cir. 2013) (affirming denial of leave to amend where statutes in proposed amendment would not provide grounds for Bowman claim).

b.  **The Second Bowman Exception**

The Former Employees have not stated a claim under the second Bowman exception. Such a claim requires an employee to show a public policy that is "expressed in [a] statute" and that "the employee was clearly a member of that class of persons directly entitled to the protection enunciated by the public policy," which the employer violated in firing her. Rowan v. Tractor

Supply Co., 559 S.E.2d 709, 711 (Va. 2002). Even if the court were to find that the Virginia HCSM statute expresses a public policy, the statute does not mention HCSM employees as a protected class. In fact, the statute does not mention HCSM employees at all. See generally Va. Code Ann. § 38.2-6300. Accordingly, there is no argument that the Former Employees are "directly entitled" to any protection under that statute. Rowan, 559 S.E.2d at 709. The Former Employees' proposed amended complaint fails to cure these defects or identify alternative statutes providing grounds for relief under this exception. The court, therefore, dismisses with prejudice any claims the Former Employees might bring under the second Bowman exception. Balas, 711 F.3d at 409–10.

c. **The Third Bowman Exception**

The Former Employees have not stated a claim under the third Bowman exception either. A claim under the third Bowman exception requires allegations that an employer "asked, or directed" an employee to engage in a criminal act, which could lead to the employee's prosecution under Virginia law. Storey, 207 F. Supp. 2d at 453; Ingleson v. Burlington Med. Supplies, Inc., 141 F. Supp. 3d 579, 588–89 (E.D. Va. 2015) (employer "sought" to engage plaintiff in adultery through physical actions and words); Twigg v. Triple Canopy, Inc., No. 10–CV–122, 2010 WL 2245511, at *3 (E.D. Va. June 2, 2010) (criminal conduct must be "demanded" by employer); Robinson v. Salvation Army, 791 S.E.2d 577, 580 (Va. 2016) (affirming dismissal where "nothing in the record show[ed] that [the employer] asked [the employee] to participate in any kind of . . . activity that would constitute a criminal act"). There are no allegations that any of the Defendants asked or demanded that any one of the Former Employees engage in any criminal behavior. At most, the Former Employees' allegations "reflect merely that" Moses and/or the Defendants committed illegal acts and fired the Former Employees "in response to [their]

willingness to disclose [those] illegal acts." Storey, 207 F. Supp. 2d at 453. The Virginia Supreme Court has "refuse[d] to recognize" this type of "generalized, common-law 'whistleblower' retaliatory discharge claim . . . as an exception to Virginia's employment-at-will doctrine. Dray v. New Mkt. Poultry Prod., Inc., 518 S.E.2d 312, 313 (Va. 1999).

Even if the complaint alleged such a demand by the Defendants, the Former Employees must also allege facts making it plausible that they "could have been prosecuted under Virginia criminal law had [they] engaged in the conduct encouraged by the employer." See Twigg, 2010 WL 2245511, at *3. "As 'every crime to be punished in Virginia must be committed in Virginia,' Plaintiff[s] must show some criminal conduct occurred," or caused "an 'immediate impact'" in Virginia. Id. at *4 (quoting Farewell v. Commonwealth, 189 S.E. 321, 323 (Va. 1937) and Moreno v. Baskerville, 452 S.E.2d 653, 654 (Va. 1995)). In Twigg, the plaintiff alleged that his employer fired him for refusing to forge documents and obtain money under false pretenses in violation of Virginia law while working in Iraq. Id. at *4. The court dismissed these claims because the plaintiff did not allege facts showing he could actually be prosecuted under Virginia law, which has limits on extraterritorial prosecution. Id. The Former Employees are citizens of Texas, Missouri, and Ohio, and the complaint does not allege that any part of their employment took place in or had an immediate impact in Virginia. Moreno, 452 S.E.2d at 654 (drug transaction in Arizona would not allow prosecution for sales down the "chain of distribution" in Virginia). Thus, as in Twigg, the Former Employers have not alleged facts showing that they could be subject to the jurisdiction of Virginia's criminal laws.

The Former Employees' proposed amended complaint also fails to state a claim under the third Bowman exception. The proposed amendments do include additional allegations that the Former Employees were asked or may have been asked to commit certain acts. See, e.g., ECF No.

49-3 ¶¶ 130, 132, 135, & 137. However, the allegations remain conclusory and do not allow the court to plausibly infer that the Defendants are liable for the misconduct alleged. <u>Iqbal</u>, 556 U.S. at 678. The proposed amendments also still lack facts showing that the Former Employees could have been subject to criminal prosecution under Virginia law.

## II. <u>The Former Employees' Motion to Amend</u>

The court, however, will permit the Former Employees to amend their complaint and plead a theory under the third <u>Bowman</u> exception, applying the liberal standard of Federal Rule of Civil Procedure 15(a)(2). A motion to amend should only be denied when "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." <u>Johnson v. Oroweat Foods Co.</u>, 785 F.2d 503, 509 (4th Cir. 1986). A motion to amend "should only be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face." <u>Id.</u> at 510. In <u>Oroweat Foods</u>, the Fourth Circuit reversed the lower court's denial of a motion to amend, ruling that the "complex" legal arguments and "factual inquiry" in the plaintiff's proposed amendments prevented the court from finding that amendment would be futile. <u>Id.</u> at 510–11. At oral argument, the Former Employees assured the court that they had further facts to plead—beyond their first proposed amended complaint—that would state a claim under the third <u>Bowman</u> exception. The court also recognizes that the Former Employees' allegations involve a complex regulatory environment and purportedly complex financial arrangements. As a result, the court does not find that further amendment would be clearly frivolous or futile under that theory.

Further, Defendants have not offered enough facts for the court to conclude that the Former Employees' proposed amendments would be made in bad faith. The court expects, however, that the Former Employees will allege sufficient facts to justify adding Eldon Hochstetler as a

defendant, if they choose to do so.

## Conclusion

For the reasons stated, the court grants the Defendants' motion in part. The court dismisses the Former Employees' claims under the first and second Bowman exceptions with prejudice, and dismisses without prejudice any claim they may have under the third Bowman exception. The court therefore grants the Former Employees' motion to amend their complaint to pursue claims under the third Bowman exception. Finally, the court denies as moot the Former Employees' motion for leave to file a reply in support of their motion to amend. Parties need not seek leave to file a reply. W.D. Va. Civ. R. 11(c)(1).

Any amended complaint and responsive pleading or motion to dismiss shall be filed in accordance with the order accompanying this opinion. The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 17th day of October, 2019

_____
Senior United States District Judge