IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| WILLIAM RICHARD HULKENBERG, SR., et al., | )<br>)<br>) Civil Action No. 3:19CV00031 |
| Plaintiffs, | )<br>) **MEMORANDUM OPINION** |
| v. | )<br>) By: Hon. Glen E. Conrad |
| ANABAPTIST HEALTHSHARE, et al., | ) Senior United States District Judge<br>) |
| Defendants. | ) |

Plaintiffs William Richard Hulkenberg, Sr., Ronald Jones, Larry Bowen, William Richard Hulkenberg, Jr., Jeremy Hulkenberg, and Andrew Hall (the "Former Employees") bring claims of wrongful termination against Anabaptist Healthshare, Kingdom Healthshare Ministries LLC, Unity Healthshare LLC, OneShare Health, LLC, Alex Cardona, and Tyler Hochstetler. Following Defendants' prior motion to dismiss and a motion to amend by the Former Employees, the court held a hearing on the motions on September 20, 2019. On October 17, 2019, the court granted the motion to dismiss in part, but afforded the Former Employees leave to amend certain of their claims. Specifically, the court dismissed with prejudice claims arising under the first two Bowman exceptions, but allowed the Former Employees to replead, amplify, and amend their claims under the third Bowman exception. Hulkenberg v. Anabaptist Healthshare, No. 3:19-CV-00031, 2019 WL 5273948 (W.D. Va. Oct. 17, 2019); see also Bowman v. State Bank of Keysville, 331 S.E.2d 797 (Va. 1985).

This matter is before the court on Defendants' motion to dismiss the Former Employees' five-count Amended Complaint under Federal Rules of Civil Procedure 12(b)(6) and 9(b). The parties appeared for a hearing on that motion on February 6, 2020. For the reasons stated, the court will grant the motion to dismiss the Amended Complaint under Rule 8's pleading standard, and

thus, need not decide whether Rule 9(b) applies.

## Background

The court summarizes facts taken from the Former Employees' Amended Complaint. See ECF No. 55. Defendants operate Health Care Sharing Ministries ("HCSMs"). An HCSM is "a health care cost sharing arrangement among individuals of the same religion based on their sincerely held religious beliefs, which arrangement is administered by a" § 501(c)(3) non-profit organization, and complies with other requirements. Va. Code Ann. § 38.2-6300. These requirements include that an HCSM:

> 3. Provides for the financial or medical needs of a member through payments directly from one member to another. The requirements of this subdivision [] may be satisfied by a trust established solely for the benefit of members, which trust is audited annually by an independent auditing firm; [and]
>
> 5. Provides written monthly statements to all members that list the total dollar amount of qualified needs submitted to the organization by members for their contribution.

Id. By following these requirements, HCSMs are not "considered to be engaging in the business of insurance" for purposes of Virginia's insurance statutes. Va. Code Ann. § 38.2-6301.

Relevant to Count I—discharge for refusal to act as an agent for an unlicensed insurer— the Former Employees allege that Defendants failed to comply with Virginia's HCSM statute by failing to appropriately limit its membership, pay for benefits, establish an annually audited trust, and provide monthly statements to members. Am. Compl. ¶¶ 86–98. In this Count, the Former Employees allege actions that they argue would have constituted violations of Virginia's insurance law, specifically acting as an agent for an unlicensed insurer. Id. (citing Va. Code Ann. §§ 38.2-1822, 38.2-1802 (A)–(B)).

According to the Amended Complaint, "Cardona and Hochstetler directed and instructed" the Former Employees to begin selling Defendants' insurance products "directly in Virginia under

2

the auspices of a valid HCSM." Id. ¶¶ 99, 112. Jones and Hall "were specifically directed to supervise a sales team in Virginia." Id. ¶ 62. The Former Employees also allege that they were "specifically tasked" with recruiting, signing, and training insurance agents, as well as performing sales-related matters in Virginia. Id. ¶¶ 66–71. Thereafter, "[a]ll plaintiffs were discharged for refusing Defendants' demand to continue to sell, solicit and negotiate [Defendants'] illegal health insurance product in Virginia . . . ." Id. ¶ 112.

In connection with Count II—discharge for refusal to conspire to commit theft of information—the Former Employees describe conduct that they conclusorily claim violates Virginia Code §§ 18.2-111 and 18.2-22. The Former Employees allege that Defendants stole information from their former business partner, Aliera. For example, "Plaintiffs were specifically tasked by Cardona with 'taking photos' of Aliera data during teleconferences with Aliera, which Cardona acknowledged belonged to Aliera but was permitted for [Defendants'] use pursuant to agreement with Aliera." Further, "Cardona tasked Plaintiffs with logging in to the Aliera Website and taking screen shots so Kingdom could mirror Aliera's program, which Cardona also instructed was permittable pursuant to the Aliera agreement." Id. ¶ 72.

According to the Former Employees, they were "expressly instructed" by Cardona "to not only model, but to out-right copy and reproduce Aliera's marketing programs and develop [them] as their own." Id. ¶ 54–56. Likewise, a marketing plan—aimed at Virginia that Hulkenberg, Sr. was tasked with developing—was allegedly "developed with Aliera information" provided by Cardona and/or Hochstetler. While Cardona "explicitly informed" the Former Employees that he had authority to use that information, id. ¶¶ 57–61, the Amended Complaint only labels, but does not explain how the copied materials were "wrongfully and fraudulently obtained." Id. ¶ 121. The Former Employees allege that they were fired "for refusing to further Defendants' embezzlement

3

of information." Id. ¶ 124.

As to Count III—discharge for refusal to engage in financial embezzlement—the Former Employees cite to the HCSM statute, and appear to allege that the Defendants embezzled from unnamed victims by violating that statute. The Former Employees allege in conclusory fashion that "[a]t all relevant times, Plaintiffs insisted that Defendants" stop violating the HCSM statute. Id. ¶ 132. They conclude that these actions would have constituted embezzlement. Id. ¶ 133.

In relation to Count IV—discharge for refusal to participate in a criminal fraud—the Former Employees claim that certain actions would have violated Virginia Code § 18.2-178. Specifically, the Former Employees allege that Defendants commissioned a consulting firm, Milliman, Inc., to conduct an actuarial analysis of certain of Defendants health share plans. The financial report (the "Milliman Report") was intended for use in the due diligence in a potential sale of Defendants' health share plans to a third party: HealthMarkets, Inc. ("HealthMarkets"). HealthMarkets apparently had concerns about Defendants' "high commission structures," and the Milliman Report was meant to induce that sale. Id. ¶¶ 72–76.

The initial Report issued on November 21, 2018, and allegedly "failed to include any accounting for any sales commission expenditures," and to disclose that Defendants were paying commissions "as high as 37%." Further, "Cardona specifically ordered [] Bowen to use only $215 per thousand dollars for sales overhead, merely 1.5%." Id. ¶¶ 77–81. Next, the Former Employees allege that "Defendants instructed Bowen to disseminate" the purportedly "fraudulent" initial Milliman Report in order to induce "Agents, brokers and call centers to sell Defendants['] unlicensed and illegal health insurance service plans." Id. ¶ 145.

On November 27, 2018, Hulkenberg, Sr. had a conference call with Milliman, and gave his opinion that "the numbers seemed wrong," and asked if they had included commissions in their

Report. Because they had not, Hulkenberg, Sr. told them that the Report was "completely inaccurate and asked if they could rerun it." In doing so, "Bowen told them to use 30% for commissions, stating that Cardona told him to always use 30% for commissions even though commissions can go as high as 37%." Id. ¶ 81. Milliman completed a second report. Upon receiving it, Cardona told Bowen that sharing this second report was "the worst thing you could have shared," and fired Bowen soon thereafter. Id. ¶ 83.

The Former Employees also allege in general terms that "in the Summer of 2018, Defendants developed and disseminated sales and marketing materials in Virginia designed to manipulate Virginians into believing that they were purchasing a health savings plan from a legitimate HCSM and not from an unlicensed and illegal health insurance scheme." Id. ¶ 143. They conclude these allegations by stating that they were "discharged for refusing to continue to disseminate sales and marketing materials and/or endorse the fraudulent Milliman report to Virginians and Agents, Brokers and Call Centers asked to perform work in Virginia." Id. ¶ 146.

Regarding Count V—discharge for refusal to aid and abet the above alleged crimes—the Former Employees allege that carrying out their duties would have violated Virginia Code § 18.2-18. "Upon learning of the illegal nature of Defendants' unlicensed and illegal health insurance services scheme, Plaintiffs refused to continue to sell, solicit and/or negotiate Defendants' unlicensed and illegal health insurance scheme to Virginians." Id. ¶ 153.

Bowen was fired in November 2018. The remaining Former Employees were first suspended at that same time, and later fired in January 2019. Id. ¶ 146.

### Standard of Review

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint. Thus, to survive a motion to dismiss, plaintiff must plead sufficient facts "to raise a right to relief above the speculative level"

and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint is "facially plausible" when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. This "standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

When ruling on a motion to dismiss, the court must "accept as true all of the factual allegations contained in the complaint, and draw all reasonable inferences in favor of the plaintiff." Weidman v. Exxon Mobil Corp., 776 F.3d 214, 219 (4th Cir. 2015) (internal quotation marks omitted). However, the same is not true for legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Likewise, "[l]abels, conclusions, . . . and naked assertions devoid of further factual enhancement will not suffice to meet the Rule 8 pleading standard." ACA Fin. Guar. Corp. v. City of Buena Vista, Virginia, 917 F.3d 206, 211 (4th Cir. 2019). If, after accepting all well-pleaded allegations in plaintiff's favor, it appears that plaintiff cannot prove any set of facts in support of the claim for relief, a motion to dismiss under Rule 12(b)(6) should be granted. Id. In making this assessment, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. Iqbal, 556 U.S. at 679.

**Discussion**

Because this case is before the court on diversity jurisdiction, the substantive law of the forum state, Virginia, applies. See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). "Virginia adheres to the employment at-will doctrine, which allows . . . the employer . . . to terminate the employment relationship without the need to articulate a reason." Francis v. Nat'l Accrediting Comm'n of Career Arts & Scis., Inc., 796 S.E.2d 188, 190 (Va. 2017) (quotation marks and

alterations omitted). In three "narrow" and "limited circumstances," referred to here as the "Bowman exceptions," the Virginia Supreme Court has recognized claims for being fired in violation of public policy. Id. at 190–91. Only the third Bowman exception is at issue here, which establishes a cause of action "[w]hen the discharge was based on the employee's refusal to engage in a criminal act." Id. (citations and quotation marks omitted); ECF Nos. 53–54 (dismissing first and second Bowman exceptions with prejudice).

A claim under the third Bowman exception requires allegations that an employer "asked[] or directed" an employee to engage in a criminal act, which could lead to the employee's prosecution under Virginia law. Storey v. Patient First Corp., 207 F. Supp. 2d 431, 453 (E.D. Va. 2002); see also Ingleson v. Burlington Med. Supplies, Inc., 141 F. Supp. 3d 579, 588–89 (E.D. Va. 2015) (employer "sought" to engage plaintiff in adultery through physical actions and words); Twigg v. Triple Canopy, Inc., No. 10–CV–122, 2010 WL 2245511, at *3 (E.D. Va. June 2, 2010) (criminal conduct must be "demanded" by employer). Such a claim also requires a "refusal" to engage in that criminal act and a causal link between that refusal and the plaintiff's termination, such that the termination was "based on" that refusal. Ingleson, 141 F. Supp. 3d at 588; Francis, 796 S.E.2d at 190–91.

Regarding Count I, the Former Employees have not set forth facts making it plausible that it would have been a crime to have assisted with the Defendants' insurance products under Virginia law. Virginia Code § 38.2-1822 prohibits "selling, soliciting, or negotiating contracts of insurance or annuity" without "a valid license to transact the class of insurance involved," or where that license has been "revoked" by the Virginia State Corporation Commission, or "voluntarily surrendered" by the license holder. Virginia Code § 38.2-1802 also makes it criminal to "sell, solicit, or negotiate" insurance contracts in Virginia without a license, with certain exceptions.

7

The Former Employees have not alleged that the Defendants lacked a license to transact in insurance in Virginia, or that Defendants' license has been revoked or surrendered at any time, including the time the Former Employees worked there. Accordingly, it is not plausible that the Former Employees would have been subject to criminal penalties in Virginia for assisting with the Defendants' products. See Robinson v. Salvation Army, 791 S.E.2d 577, 580 (Va. 2016) (affirming dismissal where "nothing in the record show[ed] that [the employer] asked [the employee] to participate in any kind of . . . activity that would constitute a criminal act"). Instead, the Former Employees would have the court wade into the thicket of Virginia insurance regulation—essentially step into the shoes of the Virginia State Corporation Commission—and determine after the fact that the Defendants' conduct violated Virginia's HCSM statutes, and that Defendants' operations should have been deemed illegal by Virginia and that Defendants' license should have been revoked. The court declines to do so. Cf. Osborn v. Ozlin, 310 U.S. 53, 66 (1940) (holding that "questions of policy" under state insurance regulations are "not for us to judge"). Accordingly, the court will dismiss Count I.

As to Count II, the Former Employees also fail to plausibly allege that they could have been prosecuted for theft of information and that they were fired for refusing to carry out instructions to do as much. The Former Employees allege that Cardona informed them they had "express authority" to copy certain information pursuant to an agreement. Am. Compl. ¶¶ 59, 116. They only allege in conclusory fashion that Cardona's representations were "false," and that copying would have been "fraudulent[]" and "not authorized." Id. ¶ 120. The court thus believes that there are no facts in the Amended Complaint that would allow the plausible inference that the copying at issue was criminal under Virginia law. In addition, no facts alleged make it plausible that refusing to copy this information had anything to do with the Former Employees' termination.

See, e.g., Weidman v. Exxon Mobil Corp., 717 F. App'x 214, 217 (4th Cir. 2018) (affirming summary judgment for failing to show causal link to termination). Thus, the court will also dismiss Count II.

Likewise, turning to Count III, the Former Employees fail to plausibly allege that they were fired for refusing to commit financial embezzlement. The Former Employees describe various financial transactions that they label as "illegal" without sufficient factual support. See, e.g., Am. Compl. ¶¶ 44–53. Further, there is no factual allegation that anyone asked any of the Former Employees to take part in any of those transactions. Accordingly, the court cannot find it plausible to infer (i) that there was a crime of financial embezzlement; (ii) that the Former Employees were asked and refused to take any part in it; and (iii) that they were fired as a result. Therefore, the court will dismiss Count III as well.

Next, Count IV also fails to state a Bowman claim. The court contrasts the instant facts to those of a case in which the United States Court of Appeals for the Fourth Circuit ruled that a plaintiff had stated a Bowman claim. In Weidman v. Exxon Mobil Corporation, the pro se plaintiff, a "Senior Physician," alleged that he had been asked to illegally "distribute stockpiled medication . . . in Virginia." 776 F.3d at 216–22. The plaintiff "refused to do so[,] informed [his supervisor] that this would be against the law," and told the supervisor that he could not obtain a medical license as long as his employer was operating an illegal pharmacy. Id. Unlike the Former Employees, the plaintiff in Weidman described this encounter in some detail. He provided dates, described emails and meetings, noted that his supervisor became "physically intimidating," and specifically alleged a campaign of retaliation. Id.

The facts alleged in the instant case are not nearly as focused. To begin, only Bowen was asked by the Defendants to carry out any task regarding the Milliman Report. The Amended

Complaint alleges that "Defendants instructed Bowen to disseminate" the Milliman Report in some relation to retail sales of Defendants' insurance products. However, no facts asserted in the Amended Complaint make it plausible that such a use of the Milliman Report would have been a criminal act. See Iqbal, 556 U.S. at 679 (facts suggesting "the mere possibility of misconduct" are insufficient); supra (regarding Count I). And importantly, the Amended Complaint does not explain what role Bowen was expected to take with respect to the HealthMarkets transaction. For his part, Hulkenberg, Sr. only became involved with the Milliman Report after Bowen contacted him. Am. Compl. ¶ 81. The Amended Complaint does not allege that the Defendants asked or directed Hulkenberg, Sr. to carry out any task regarding the Report. As to the remaining Former Employees, the Amended Complaint does not allege, except in conclusory fashion, that any of them had anything to do with the Milliman Report.

In addition, as stated the court's prior order, the Former Employees must plausibly allege that they "could have been prosecuted under Virginia criminal law had [they] engaged in the conduct encouraged by the employer." See Twigg, 2010 WL 2245511, at *3. "As 'every crime to be punished in Virginia must be committed in Virginia,' Plaintiff[s] must show some criminal conduct occurred," or caused "an 'immediate impact'" in Virginia. Twigg, 2010 WL 2245511, at *4 (quoting Farewell v. Commonwealth, 189 S.E. 321, 323 (Va. 1937) and Moreno v. Baskerville, 452 S.E.2d 653, 654 (Va. 1995)).

In Twigg, the plaintiff alleged that his employer fired him for refusing to forge documents and obtain money under false pretenses in violation of Virginia Code §§ 18.2–172 and 18.2–178 while working for a government contractor in Iraq. Id. at *4. The court dismissed these claims because the plaintiff did not allege facts making it plausible that he could actually be prosecuted under Virginia law, which has limits on extraterritorial prosecution. Id. The court believes this

analysis is persuasive. A Bowman claim arises from the public policies established by the Virginia General Assembly in "specific Virginia statutes." Lawrence Chrysler Plymouth Corp. v. Brooks, 465 S.E.2d 806, 809 (Va. 1996). Further, the Virginia Supreme Court "has consistently characterized" Bowman claims "as 'narrow.'" Francis, 796 S.E.2d at 172. Accordingly, a Bowman claim based on a purported violation of Virginia public policy must fit within the bounds of that specific policy—including that expressed in criminal laws. See Storey, 207 F. Supp. 2d at 454.

In some instances, Virginia law does permit "the prosecution of an 'an offense committed in this State, although the initial act in the chain of events forming the offense was committed outside the State.'" Twigg, 2010 WL 2245511, at *4 (quoting Lovelace v. Commonwealth, 138 S.E.2d 253, 255 (Va. 1964)). Looking to the facts of this case, Hulkenberg, Sr. is a resident of Texas and Bowen is a resident of Missouri. Moreover, and importantly, Cardona is a Georgia resident, and he was allegedly the key figure in the conduct surrounding the HealthMarkets transaction. Several of the Defendants are Virginia residents, and thus, could have been subject to prosecution in Virginia. That does not necessarily mean that the Former Employees could have been as well, and the Former Employees fail to allege sufficient facts to plausibly infer that they could have been. See Twigg, 2010 WL 2245511, at *4 (rejecting argument that plaintiff might be prosecuted in Virginia because the defendants had Virginia headquarters); Moreno, 452 S.E.2d at 654 (holding that drug transaction in Arizona would not allow prosecution for sales down the "chain of distribution" in Virginia, and that "Moreno was an accessory in Arizona, not in Virginia").

In sum, no specific, non-conclusory facts asserted in the Amended Complaint and no authority cited by the Former Employees have convinced the court that any of them could have

been prosecuted in Virginia for crimes, specifically crimes related to the HealthMarkets transaction. Thus, as in Twigg, it is "purely hypothetical" that the Former Employees would have been subject to prosecution under Virginia's criminal laws. Twigg, 2010 WL 2245511, at *4; see also Twombly, 550 U.S. at 570 (holding that plaintiffs must "nudge[] their claims across the line from conceivable to plausible" to survive a Rule 12(b)(6) motion). Consequently, the court will dismiss Count IV.

Finally, looking to Count V, the court concludes that the Former Employees' Bowman claim premised on aiding and abetting fails for the same reasons that each of the claims based on substantive alleged crimes fail. As a result, the court will dismiss this claim as well.

**Conclusion**

For the reasons stated, the court will grant the motion to dismiss the Amended Complaint.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This __7th__ day of April, 2020.

_____
Senior United States District Judge